UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD JOHNSON,

Plaintiff,

v.                                                  CAUSE NO. 3:21-CV-472-JD-MGG

JOHN GALIPEAU, et al.,

Defendants.

<u>OPINION AND ORDER</u>

Donald Johnson, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his complaint, Johnson states that, on September 24, 2020, he was placed in cell S2-6 in the B2 quarantine unit at Westville Correctional Facility. ECF 2 at 2. He alleges cell S2-6 was filled with dust, dirt, mold, and debris which restricted his ability to breathe and caused him to wake up coughing and congested in the morning. *Id*. Johnson states the common areas of the restroom in the B2 unit were unusable because they were filled with asbestos and mold hung down from the ceiling in the shower area.

*Id.* Correctional staff told Johnson that the living conditions in the B2 unit were like a "five star hotel" when compared to the conditions in other areas of the facility. *Id.*

In October 2020, Johnson was moved from the B2 unit to the G.S.C. side of the facility where the living conditions were even worse than those in the B2 unit. ECF 2 at 2. Johnson represents there were broken windows in the bed area and the ceiling in the shower area had fallen in. *Id.* He states there was dirty air that blew directly over his bed and lead paint was chipping off of the walls. *Id.* There was also mold, dust, and asbestos. *Id.* The dirty conditions caused Johnson to be congested on a daily basis and, as a result, he had to use his inhaler more than normal. *Id.*

On October 28, 2020, Johnson met with medical staff and reported he had pain in his lungs that made breathing uncomfortable. ECF 2 at 3. He was told there was nothing that could be done, and he should try the cold medicine that was available in the commissary. *Id.* However, the medicine did not help with his lung pain or shortness of breath. *Id.* at 2-3.

Because there were no steps taken to improve the facility's living conditions, Johnson wrote a letter to Warden John Galipeau. ECF 2 at 3. Warden Galipeau responded to Johnson's letter by telling him he should contact the medical unit and he forwarded Johnson's informal grievance to Medical Director Dorothy Livers. *Id.* In response to the informal grievance, Livers indicated that Johnson should submit a healthcare request if his symptoms returned or worsened. *Id.* Livers later responded to another one of Johnson's informal grievances telling him he should submit a healthcare

2

request if he required treatment. *Id*. However, when Johnson met with the medical staff, they again told him there was nothing they could do to help him. *Id*.

Johnson was later moved to cell N1 on the IC side of the facility where the living conditions were the similar to the conditions in the other units. ECF 2 at 3. He stayed in cell N1 for five days until he was moved to unit P1, which had the worst living conditions of all of the units. *Id*. Johnson continued to have lung pain and breathing conditions and, while he was referred back to the medical unit, he was told there was nothing that could be done for him. *Id*.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Because Johnson alleges that Warden Galipeau knew about the conditions of the various units where he was housed during September and October 2020 and it can be plausibly inferred that he took no steps to remedy the conditions, he may proceed against Warden Galipeau on his claim that he was subjected to unconstitutional conditions of confinement beginning in September 2020, in violation of the Eighth Amendment.

To the extent Johnson has sued Medical Director Livers, a § 1983 suit requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003); *see also Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's."). Because Johnson has not alleged that Livers was personally involved in the alleged constitutional deprivation, he cannot proceed against her.

Furthermore, Johnson has sued Grievance Officer John Harvil alleging that he impeded the grievance process when he refused to return his informal grievances. ECF

2 at 3. However, Johnson has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Thus, he may not proceed against Harvil.

Johnson is not proceeding in forma pauperis. Therefore, the court will not serve Warden Galipeau pursuant to 28 U.S.C. § 1915(d). Rather, it is Johnson's obligation to serve Warden Galipeau. If Johnson desires the assistance of the United States Marshal's Service, he may contact them directly to make appropriate arrangements.

For these reasons, the court:

(1) GRANTS Donald Johnson leave to proceed against Warden John Galipeau in his individual capacity for monetary damages for subjecting him to unconstitutional conditions of confinement beginning in September 2020, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Dorothy Livers and John Harvil;

(4) DIRECTS Donald Johnson to make arrangements to serve Warden John Galipeau; and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Warden John Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 8, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT