UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD JOHNSON,

    Plaintiff,

    v.      CAUSE NO. 3:21-CV-472-MGG

JOHN GALIPEAU,

    Defendant.

OPINION AND ORDER

Donald Johnson, a prisoner without a lawyer, is proceeding in this case "against Warden John Galipeau in his individual capacity for monetary damages for subjecting him to unconstitutional conditions of confinement beginning in September 2020, in violation of the Eighth Amendment[.]" ECF 8 at 5. Specifically, Johnson alleged in his complaint he was exposed to unsanitary living conditions including dust, dirt, mold, debris, chipping paint, and asbestos in various locations at Westville Correctional Facility ("WCF"), which restricted his ability to breathe and caused him to wake up congested in the morning. *Id.* at 1-3. Warden Galipeau filed a motion for summary judgment, arguing he did not violate Johnson's Eighth Amendment rights. ECF 64. Johnson filed a response, and Warden Galipeau filed a reply. ECF 73, 74, 76, 77. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the

evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir.

2

2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Warden Galipeau provides an affidavit, in which he attests to the following facts. ECF 64-5. On January 14, 2021, Warden Galipeau received a "Request for Interview" form from Johnson asserting he had lung pain and trouble breathing and thought it was due to exposure to mold, asbestos, dust, debris, lead paint, and broken windows. *Id.* at 1; ECF 64-6. In response, Warden Galipeau instructed Johnson to contact the medical unit, as Warden Galipeau is not a medical provider and is not trained to treat or determine the cause of lung pain or breathing problems. ECF 64-5 at 1-2; ECF 64-6. This "Request for Interview" form is the only correspondence Warden Galipeau received from Johnson. ECF 64-5 at 2. Warden Galipeau attests that Johnson's medical records show he received regular treatment for his asthma from medical practitioners at WCF

3

and do not document any concern his asthma was worsening or he was exposed to any unsanitary conditions that caused his condition to worsen. *Id.*

Warden Galipeau provides Johnson's medical records, which show the following facts. ECF 64-1. Johnson was diagnosed with asthma prior to his incarceration at WCF and regularly saw medical staff at WCF for chronic care visits related to his asthma. *Id.* at 2-3. On October 28, 2020, he saw a nurse and complained of congestion which he attributed to mold, asbestos, dust, debris, lead paint, and broken windows in his sleeping area. *Id.* at 6-8. The nurse instructed him to purchase over-the-counter medications from the commissary and return if his symptoms did not subside. *Id.* Johnson continued to see nurses and physicians for chronic care visits over the next two years and his records consistently indicate his breathing was normal, he only infrequently used his inhaler, and his asthma was doing well. *Id.* at 24-26, 33, 42-44. Around July 2022, Johnson was transferred out of WCF. *Id.* at 46-55; ECF 33.

Warden Galipeau also provides an affidavit from John Salyer, the Safety Hazard Manager at WCF, who attests to the following facts. ECF 64-2. In his role as Safety Hazard Manager, Salyer analyzes, identifies, and measures hazards in the prison that can cause sickness or discomfort. *Id.* at 1. As part of these duties, Salyer conducts monthly inspections of the facility, including the housing units. *Id.* Based on his monthly inspections, Salyer has no concern the air flowing through the prison contains asbestos, mold, or lead-based paint. *Id.* As such, he has not ordered or requested air quality testing at the prison, which would be necessary to determine the presence of

4

airborne contaminants. *Id.*[1] The facility employs sanitation crews to clean high-touch areas, including sinks and faucet handles. *Id.* Otherwise, inmates are responsible for cleaning and maintaining their own living quarters, and are provided with daily cleaning supplies including germicide, disinfectant, floor cleaner, glass cleaner, and toilet bowl cleaner. *Id.*[2]

Warden Galipeau argues no reasonable jury could conclude he violated Johnson's Eighth Amendment rights because the undisputed facts show Johnson only complained to him once of medical concerns and he reasonably referred Johnson to the medical unit and deferred to their treatment decisions. ECF 65 at 9-10. Johnson responds that Warden Galipeau was deliberately indifferent because he was aware of and responsible for the unsanitary conditions at WCF but didn't fix the issues. ECF 73 at 3-4; ECF 73-1 at 11-12.

Here, based on the evidence in the record, no reasonable jury could conclude Warden Galipeau acted with "a total unconcern" for Johnson's welfare or a "conscious, culpable refusal" to prevent harm. Specifically, when Johnson informed Warden Galipeau he was experiencing lung pain and breathing issues, Warden Galipeau reasonably referred him to the medical unit. Johnson's medical records show the medical unit at WCF consistently treated him for his breathing issues, found his asthma

---

[1] Johnson argues that, if Salyer conducted monthly inspections like he claims, he would have noticed rusted windows, black mold spores, and other conditions necessitating air quality testing. ECF 74 at 2-3. But while Johnson takes issue with the manner in which Salyer conducted the monthly inspections, he does not provide any evidence disputing Salyer's attestation that he conducted monthly inspections.

[2] Johnson argues that these chemicals were available during business days but were not always available during night shift and did not arrive on holidays or weekdays. ECF 74 at 5. The court accepts that as undisputed.

5

was well maintained, and never opined that prison conditions were causing him any issues. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Warden Galipeau was not deliberately indifferent for responding to Johnson's "Request for Interview" form by referring him to the medical unit, and Johnson provides no evidence he ever submitted any further correspondence to Warden Galipeau.

In his response, Johnson argues Warden Galipeau was deliberately indifferent because he walked through the cellhouse and observed the unsanitary conditions but failed to remedy the conditions. ECF 74 at 5-7. However, "[s]omething more than generalized knowledge and inaction is required for personal responsibility." *Mishler v. Wexford Health of Indiana*, No. 1:22-cv-781-TWP-DML, 2022 WL 3043527 (S.D. Ind. August 2, 2022). It is undisputed it was the duty of Safety Hazard Manager Salyer, not Warden Galipeau, to conduct monthly inspections of the prison, monitor the air quality, and distribute cleaning supplies to inmates. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job"). Even assuming Salyer was deliberately indifferent in carrying out these duties, this does not show deliberate indifference by Warden Galipeau. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable."). Thus, even accepting as true that Warden Galipeau was aware of and did

not personally remedy the unsanitary conditions described by Johnson, he was not deliberately indifferent for relying on Safety Hazard Manager Salyer to monitor and inspect for airborne contaminants and make cleaning supplies available to the inmates.

In summary, the undisputed facts show Warden Galipeau reasonably deferred to the medical unit to treat Johnson's medical issues and reasonably deferred to Safety Hazard Manager Salyer to monitor for airborne contaminants and keep the prison environment sanitary for inmates. Therefore, there is no evidence in the record by which a reasonable jury could conclude Warden Galipeau was deliberately indifferent to a serious risk of harm to Johnson. Summary judgment is warranted in favor of Warden Galipeau.

For these reasons, the court:

(1) GRANTS Warden Galipeau's summary judgment motion (ECF 64); and

(2) DIRECTS the clerk to enter judgment in favor of Warden Galipeau and against Donald Johnson and to close this case.

SO ORDERED on November 8, 2023

                                            S/Michael G. Gotsch, Sr.
                                            Michael G. Gotsch, Sr.
                                            United States Magistrate Judge